United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| JOSEPH THOMAS, | Case No. 18-cv-06409-LB |
| Plaintiff, | |
| v. | **ORDER GRANTING MOTION TO DISMISS** |
| SHREE JALARAM LLC, et al., | Re: ECF No. 62 |
| Defendants. | |

## INTRODUCTION

The plaintiff, Joseph Thomas, who is representing himself, filed a complaint against the defendants based on allegedly unsanitary and untenable conditions at the National Budget Hotel, where he lived.[1] He also alleged discriminatory practices by the owners and operators of the Hotel and retaliation against him for lodging complaints about the building.[2]

Defendants Balwantsinh Thakor, Kirasinh Thakor, and Shree Jalaram Lodging LP (erroneously sued as Shree Jalaram LLC) (collectively, the "Shree Jalaram defendants") move to dismiss the plaintiff's claims against them under Federal Rule of Civil Procedure 12(b)(6).[3] They

---

[1] Third Amended Compl. ("TAC") – ECF No. 46. Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] *Id.*

[3] Mot. – ECF No. 62.

ORDER – No. 18-cv-06409-LB

argue that the plaintiff's claims against them should be dismissed because (1) the plaintiff released all claims against them when he signed two settlement agreements with the parties and (2) the claims are barred by the doctrine of res judicata because each of his claims was either settled or litigated, or should have been raised in the previous proceedings.[4] They also seek an injunction to enforce the covenant not to sue in the earlier settlement agreements.[5]

Under Civil Local Rule 7-1(b), the court can decide the motion without oral argument. The court finds that the plaintiff's claims against these defendants are barred by the plain terms of the settlement agreements and the doctrine of res judicata and grants the motion to dismiss.

## STATEMENT[6]

The plaintiff moved into the National Hotel Budget Inn ("the Hotel") in San Francisco, California in November 2012.[7] The Hotel " was overrun with bedbugs, roaches, mice, and rats. Every toilet and shower leaked or was inoperable, the heat did not work properly, and windows were missing."[8] The plaintiff "filed scores of complaints with [the] Department of Building Inspection and the Department of Public Health between 2014 and 2018."[9] In July 2015, he was "the lead Plaintiff" in a lawsuit about "habitability issues" at the Hotel.[10] The other plaintiffs were Jeffrey Scarcello, Ty Cook, and Christopher Soots.[11] In October 2016, he settled the suit with

---

[4] *Id.* at 14–21.

[5] *Id.* at 6.

[6] The facts are from the allegations in the amended complaint, documents attached to the complaint, and documents submitted by the defendants in a declaration and in a request for judicial notice. The court considers the first settlement agreement under the incorporation-by-reference doctrine and takes judicial notice of the public records. *Knievel v. ESPN,* 393 F.3d 1068, 1076–77 (9th Cir. 2005); *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).

[7] TAC – ECF No. 46 at 4 (¶ 6).

[8] *Id.*

[9] *Id.*

[10] *Id. Thomas v. Thakor, et al*, San Francisco Superior Court No. CGC-15-547763 (October 2016 Settlement Agreement, Ex. B to Thakor Decl. – ECF No. 62-1 at 7).

[11] *See* October 2016 Settlement Agreement, Ex. B to Thakor Decl. – ECF No. 62-1 at 7 (¶ 1).

1  Balwantsinh "Bill" Thakor.[12] The settlement "stipulated [that] *PLAINTIFFS would pay no rent
2  until the City and County of San Francisco had approved all of the repairs and remodeling.*"[13]

3  The October 2016 Settlement Agreement listed the "released parties" as follows:

> Balwantsinh Thakor, Lataban Thakor, Kirasinh Thakor and Shree Jalaram Lodging LP dba Budget Inn including, but not limited to, their respective current and former partners, owners, co-owners, principals, managers, associates, predecessors, subsidiaries, successors, assigns, heirs, employees, independent contractors, subcontractors, agents, representatives, officers, directors, parent entities, affiliated entities, predecessor entities, successor entities, insurers, members, and attorneys.[14]

Under the agreement, the defendants agreed to pay $300,000 to the plaintiffs.[15] They also agreed not to collect new rents from the claimants in the suit "until after CCSF signoff of the remodel work presently being completed."[16] Mr. Thomas agreed to "promptly withdraw" his appeals regarding the work permits and to "take no other steps to obstruct the completion of the bathroom and other upgrades to the Budget Inn."[17]

The Agreement contained the following mutual release:

> CLAIMANTS hereby release and forever discharge the RELEASED PARTIES of and from any and all claims, demands, actions, causes of action, liens, . . . damages, any sanctions awarded by any court against RELEASED PARTIES related to the SUBJECT ACTION, losses, costs, attorney's fees and expenses of every kind or nature whatsoever, known or unknown, suspected or unsuspected, fixed or contingent, which they may now have, against the RELEASED PARTIES by reason of any matter, cause, or thing arising out of or connected with their occupancy, as tenants, guests, or otherwise, at the premises commonly known as the Budget Inn, 1139 Market Street, San Francisco, California, any injury to or damages of CLAIMANTS occurring at or arising out of said premises, or by reason of any matter, cause or thing arising out of or connected with any landlord tenant relationship existing between the RELEASED PARTIES, or any one of them, and the CLAIMANTS, or any one of them, at any time. The subject matter of this released includes without limitation or exclusion any and all causes of action, actions, claims or demands, known or unknown, of CLAIMANTS existing or accruing at any

---

[12] TAC – ECF No. 46 at 4 (¶ 7).
[13] *Id.*
[14] October 2016 Settlement Agreement, Ex. B to Thakor Decl. – ECF No. 62-1 at 7 (¶ 2).
[15] *Id.* at 8 (¶ 6).
[16] *Id.* at 19 (¶ 29).
[17] *Id.* (¶ 30).

time against the RELEASED PARTIES up to the effective date of this Agreement, including but not limited to those alleged in the SUBJECT ACTION. CLAIMANTS are not releasing future claims or damages as they relate to any harm suffered for actions or inactions of RELEASED PARTIES which take place after execution of the release.[18]

The Agreement contained the following provision:

(24) <u>Covenants Not to Sue</u> To the extent allowed by law, in consideration for the matters stated herein, CLAIMANTS hereby covenant and agree never to commence or in any manner prosecute against RELEASED PARTIES or any master tenant any legal action or other proceeding based in whole or in part upon any of the claims, demands, causes of action, obligations, damages, or liabilities released herein for:

a) Those matters alleged or that could have been alleged in San Francisco County Superior Court case Number CGC-15-547763 up to the Effective Date of this Agreement; and

b) In the event that repair or renovations of the Budget Inn renders any CLAIMANT'S unit temporarily uninhabitable, the current owners agree to abide by the temporary relocation provisions of the San Francisco Rent Ordinance. During any such temporary relocation, all work shall be performed in a workmanlike and non-negligent manner.[19]

In December, 2016, Tenderloin Housing Clinics ("THC") took over the management of the Hotel and converted it into "supportive housing."[20] Mr. Thomas alleges that the THC clients brought "needles, sexual liaisons, bedbugs, roaches, noise, dogs, and visitors" to the building and turned it into a "safe-injection site."[21] Mr. Thomas asked THC "about housing in a building that wasn't 'supportive housing;' but THC never responded."[22] He alleges that THC "has a history of churning tenants in order to get higher rents."[23] The plaintiff's "quiet enjoyment of the premises" lasted one month before the THC clients moved in.[24]

---

[18] *Id.* at 10–11 (¶ 8(a)).

[19] *Id.* at 17–18 (¶ 24).

[20] TAC – ECF No. 46 at 4 (¶ 8).

[21] *Id.*

[22] *Id.* at 9 (¶ 18).

[23] *Id.* at 5 (¶ 10).

[24] *Id.* at 4 (¶ 9).

ORDER – No. 18-cv-06409-LB            4

Between February and August 2017, the plaintiff was "forced to leave the building for weeks or months at a time" because of "noise and unsanitary conditions."[25] He alleges that THC "continued the remodeling work, using unlicensed contractors and unskilled labor."[26] His complaints to THC went unheeded.[27] The plaintiff listed the following "violations" that occurred between January and September 2017:

> Broken light fixtures, less than required number of ceiling fans, smoke alarms not working properly, fire alarms not working properly, security system frequently malfunctions, heat cannot be regulated by tenants or staff, inadequate heat, heat not turned on, thermostat does not work, insufficient hot water, inadequate water pressure, rust/discoloration in water, inadequate drainage, toilet leaks, shower leak, feces on toilets, walls, floors, door handles and light switches, showers dirty/no curtains, no mats in bathrooms, dog waste in the halls and stairways, flooring dislodged, floors and stairs filthy, windows do not open or close, windows have no screen, front door often does not close securely, stairways and halls dirty, dust accumulation, walkways and stairways have trop hazards, laundry room dirty, inadequate trash and recycling bins/pickup, rodents, cockroaches, bedbugs, spiders, flies/mosquitoes, fleas, mold/mildew, tobacco and "crack" smoke from tenants in building, drug trafficking on the premises, "activity" in halls all night, syringes left in common areas, criminal acts by other tenants, prostitution in the building, moving contaminated items through the building without containment, and no rear fire exit that can be used by most of the tenants.[28]

The plaintiff's "complaints to DPH finally result[ed] in one tenant who was near death being relocated to a place he could receive proper care, and to DBI issuing Notices of Violation."[29] In July 2017 the plaintiff was "attacked by one of the janitors (Ricardo) working for THC, because [the] manager Mwangi Mukami told him [he] had complained about his work."[30]

In September 2017 the plaintiff contacted California Senator Diane Feinstein's office about conditions at the Hotel.[31] The Department of Housing and Urban Development ("HUD")

---

[25] *Id.*

[26] *Id.*

[27] *Id.*

[28] *Id.* at 5–6 (¶ 11).

[29] *Id.*

[30] *Id.* at 5 (¶ 10).

[31] *Id.* at 5–6 (¶ 11).

ORDER – No. 18-cv-06409-LB  5

"conducted an investigation, but found nothing, despite" the conditions documented by the plaintiff.[32] "Immediately after the HUD investigation," the plaintiff received an eviction notice.[33]

In October 2017, Shree Jalaram Lodging LP filed an unlawful-detainer action against Mr. Thomas in San Francisco Superior Court.[34] The plaintiff "fought" the eviction, and the parties "reach[ed] a settlement where they [paid] him $30,000, and [he] agree[d] to leave by February 1, 2018."[35] The Shree Jalaram defendants attached the November 2017 Settlement Agreement to their motion.[36] Pursuant to the agreement, Shree Jalaram would pay Mr. Thomas $30,000, with $10,000 payable within five days of the date of agreement.[37] In return, Mr. Thomas agreed that he would vacate the unit by February 1, 2018.[38] The agreement stated that if Mr. Thomas complied with his obligations under the agreement, Shree Jalaram would "waive all remaining accrued and unpaid rent and unlawful detainer damages" and would "tender the remaining $20,000 immediately" to Mr. Thomas.[39] The agreement contained a mutual release of all claims.[40] The relevant portions of the release are as follows:

> 6) The parties expressly waive and relinquish any and all rights and benefits that they may have had under or which may be conferred upon them by the provisions of California Civil Code § 1542.[41] In connection with such waiver and relinquishment, the Parties hereby acknowledge that they are aware that they or their attorneys may

---

[32] *Id.* In a "Determination of No Reasonable Cause," Anne Quesada, Regional Director of the Office of Fair Housing and Equal Opportunity, wrote that the department "investigated the complaint and [] determined that there is no reasonable cause to establish that" the defendants violated the Fair Housing Act. HUD Determination, Ex. A to Thakor Decl. – ECF No. 62-1 at 4–5.

[33] TAC – ECF No. 46 at 5–6 (¶ 11).

[34] *Shree Jalaram Lodging LP v. Joseph Thomas,* San Francisco Superior Court Case No. CUD-17-660071 (November 2017 Settlement Agreement, Ex. C to Thakor Decl. – ECF No. 62-1 at 32, 33 (¶ 2)).

[35] TAC – ECF No. 46 at 5–6 (¶ 11).

[36] November 2017 Settlement Agreement, Ex. C to Thakor Decl. – ECF No. 62-1 at 32.

[37] *Id.* at 34 (¶ 1(b)).

[38] *Id.* (¶ 1(c)).

[39] *Id.* at 37 (¶ 2(a)).

[40] *Id.* at 38–40.

[41] California Civil Code § 1542 provides the following: "A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party." Cal. Civ. Code § 1542.

> discover claims or facts in addition to or different from those which they now know or believe to exist with respect to the subject matter of this Agreement, but that it is their intention to hereby fully, finally and forever settle and release all of the claims known or unknown, suspected or unsuspected, which they now have or may have against each other concerning any subject matter whatsoever, except as provided hereinabove. In furtherance of such intention, the release herein given shall be and remain in effect notwithstanding the discovery of existence of such additional different claims or facts.
>
> 7) Except for their rights to enforce the terms of the Agreement and as provided hereinabove, the Parties hereby release and forever discharge each other, and their respective present and former agents, principals, attorneys, consultants, beneficiaries, heirs, successors, and assigns, jointly and individually, of and from any and all claims, demands, causes of action, obligations, damages, and liabilities which said Parties now have or could assert in any manner against any said persons or entities arising from or relating to Defendant's occupancy of the Premises, with the express intention of effecting the legal consequences provided for under California Civil Code § 1541, the extinguishment of all obligations owed to the other Parties arising from or in connection with the matters released herein.
>
> 8) The Parties acknowledge that they have entered into this Agreement freely and voluntarily, and before they signed this Agreement, they have had the opportunity to seek advice from their own legal counsel concerning its provisions.[42]

On December 11, 2017, Mr. Thomas was awoken by "fighting words" at his door.[43] Jeffrey Scarcello, another resident of the Hotel, was uttering racial and homophobic slurs at him through his door.[44] Mr. Scarcello "incited the other tenants in the building by telling them the reason the heat wasn't working properly is because 'management was retaliating against the building' on account of [the plaintiff's] advisory to the tenants of their rights to safe and habitable living conditions.[45] The plaintiff "felt threatened, and did everything possible to get Sarcello away from [his] door."[46] When the plaintiff eventually exited his room, "most of the mob [had] disappeared back into their rooms" but Mr. Sarcello was still there and "stood close enough so that spittle was sprayed into [the plaintiff's] face."[47] "Half-asleep, and with [his adrenaline surging, all [the

---

[42] November 2017 Settlement Agreement, Ex. C to Thakor Decl. – ECF No. 62-1 at 38–39 (¶¶ 6–8).
[43] TAC – ECF No. 46 at 6 (¶ 13).
[44] *Id.*
[45] *Id.*
[46] *Id.*
[47] *Id.*

plaintiff] remember[s] is chasing him away from [his] room."[48] He called the SFPD, who told Mr. Scarcello to stay away from his door.[49] The following day, the plaintiff "filled out a Tenant Communication form and addressed it to Mukami," the manager of the building.[50]

On January 18, 2018, the plaintiff was served with an order to appear in court "the next day."[51] He alleges that the desk clerk "'forgot' to give [him] the notice when it arrived."[52] The attorney representing Shree Jalaram and THC "would not tell [him] what the case was about, so [he] had no time to prepare a defense or find representation."[53] Shree Jalaram and THC claimed that he had "caused a disturbance, and therefore violated the Settlement Agreement" based on his altercation with Mr. Scarcello.[54] Mr. Thomas alleges that "the evidence was manipulated to make it a appear a black man was assaulting a white man."[55] The court "voided the settlement agreement and, as a result, the plaintiff became "homeless and penniless."[56]

Mr. Thomas alleges that "as of February 2018" the remodeling work on the Hotel was still not completed, "specifically the bathrooms in the Southwest corner of the building."[57]

In March 2018 the plaintiff filed a second complaint with HUD.[58] HUD "said that the videotape had no sound, so they were unable to hear anything that was said."[59] The video "did not show [Mr. Thomas's] interactions with other tenants, which le[]d [him] to believe that the video

---

[48] *Id.*
[49] *Id.*
[50] *Id.*
[51] *Id.* at 6–7 (¶ 14).
[52] *Id.*
[53] *Id.*
[54] *Id.*
[55] *Id.*
[56] *Id.*
[57] *Id.* at 4 (¶ 7).
[58] *Id.* at 7 (¶ 15).
[59] *Id.*

[was] altered."[60] HUD denied his claim, but "indicated that [he] could sue in Federal Court for retaliation and habitability issues."[61] Mr. Thomas filed the instant lawsuit on October 19, 2018.[62]

The plaintiff's operative complaint names Randall Shaw, Mwangi Mukami, Jeffrey Scarcello, Tenderloin Housing Clinic, Inc. ("THC"), Balwantsinh D. Thakor, Kirasinh Thakor, and Shree Jalaram as defendants.[63] He brings five claims: (1) Violation of the Civil Rights Act of 1868 (18 U.S.C. § 5245(B)(2) and the Violent Crime Control and Law Enforcement Act (28 U.S.C. § 994) based on THC employees allegedly assaulting Mr. Thomas and directing racial slurs at him; (2) Violation of the Fair Housing Act (42 U.S.C. §§ 3604, 3617) based on alleged retaliation against Mr. Thomas after he raised issues regarding the conditions at the Hotel and discrimination against him; (3) Violation of the Housing and Community Development Act (42 U.S.C.A. § 5304) based on his not being offered a new lease in the Hotel (or alternative housing) after it changed ownership; (4) Violation of California Civil Code § 1941.1 based on the conditions in the Hotel being "untenable"; and (5) Violation of the California Health and Safety Code § 17920.3 also based on the alleged conditions at the Hotel.[64]

## STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of what the claims are and the grounds upon which they rest. *See* Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic

---

[60] *Id.*

[61] *Id.*

[62] Compl. – ECF No. 1.

[63] TAC – ECF No. 46 at 1.

[64] *Id.* at 7–13 (¶¶ 16–20). The first claim is against only the THC defendants, so the court does not address it here.

recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a claim for relief above the speculative level[.]" *Id.* (internal citations omitted).

To survive a motion to dismiss, a complaint must contain sufficient factual allegations, which when accepted as true, "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 557).

"The Supreme Court has instructed the federal courts to liberally construe the inartful pleading of pro se litigants. It is settled that the allegations [in a pro se complaint,] however inartfully pleaded[,] are held to less stringent standards than formal pleadings drafted by lawyers." *Eldridge v. Block,* 832 F.2d 1132, 1137 (9th Cir. 1987) (internal citations and quotations omitted); *see Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (per curiam); *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000); *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner,* 404 U.S. 519, 520 (1972) (per curiam); *Hamilton v. Brown*, 630 F.3d 889, 893 (9th Cir. 2011).

If a court dismisses a complaint, it should give leave to amend unless the "pleading could not possibly be cured by the allegation of other facts." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1182 (9th Cir. 2016) (citations and internal quotation marks omitted). But "leave to amend may be denied when a plaintiff has demonstrated a 'repeated failure to cure deficiencies by amendments previously allowed.'" *Id.* at 1183 (quoting *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003)).

# ANALYSIS

The Shree Jalaram defendants move to dismiss the plaintiff's claims against them on the following grounds: (1) all of the plaintiff's claims are covered by the release provisions in the settlement agreements and (2) the plaintiff's claims are barred by res judicata.[65] The plain terms of the October 2016 and November 2017 Settlement Agreements bar the plaintiff's claims, and the claims are barred under principles of res judicata.

## 1. The Plaintiff Released His Claims Against the Shree Jalaram Defendants

"The construction and enforcement of settlement agreements are governed by principles of local law which apply to interpretation of contracts generally." *United Commercial Ins. Service, Inc. v. Paymaster Corp.*, 962 F.2d 853, 856 (9th Cir. 1992) (internal citations omitted). "According to the California Supreme Court, a release is the 'abandonment, relinquishment or giving up or a right to the person against whom it might have been demanded or enforced . . . and its effect is to extinguish the cause of action.'" *Marder v. Lopez,* 450 F.3d 445, 449 (9th Cir. 2006) (quoting *Pellett v. Sonotone Corp.,* 26 Cal. 2d 705, 711 (1945)).; *see also* Cal. Civ. Code § 1541 ("An obligation is extinguished by a release therefrom given to the debtor by the creditor, upon a new consideration, or in writing, with or without new consideration."). "'In general, a written release extinguishes any obligation covered by the release's terms, provided it has not been obtained by fraud, deception, misrepresentation, duress, or undue influence.'" *Marder,* 450 F.3d at 449 (quoting *Skrbina v. Fleming Cos.,* 45 Cal. App. 4th 1353 (1996)).

"The interpretation of a release is governed by the same principles applicable to any other contractual agreement." *Id.* (citing *Benedek v. PLC Santa Monica, LLC,* 104 Cal. App. 4th 1351, 1357 (2002)). "The court must interpret the [r]elease so as to give effect to the parties' mutual intent as it existed when they contracted." *Id.* (citing Cal. Civ. Code § 1636; *Bank of the W. v. Superior Court,* 2 Cal. 4th 1254, 1264–65 (1992)). The parties' intent should be inferred from the language of the [r]elease, so long as that language is not ambiguous or uncertain." *Id.* (citing Cal.

---

[65] Mot. – ECF No. 62 at 6.

Civ. Code §§ 1638, 1639). "'Where contract language is clear and explicit and does not lead to absurd results, [the court] ascertains intent from the written terms and go[es] no further.'" *Shaw v. Regents of Univ. of Cal.,* 58 Cal. App. 4th 44, 53 (1997) (quoting *Ticor Title Ins. Co. v. Employers Ins. of Wausau,* 40 Cal. App. 4th 1699, 1707 (1995)).

As set forth in the statement, both settlement agreements contained broad release provisions. The plain language of these provisions unequivocally bars all claims, known or unknown, with a waiver of Civil Code § 1542, arising from Mr. Thomas's occupancy in the Hotel.[66] The plaintiff's claims against the Shree Jalaram defendants all arise out of the conditions at the Hotel and his eviction from his unit. Thus, the claims are covered by the releases, which bar Mr. Thomas from relitigating them here.

Mr. Thomas does not seriously contest that his claims are barred by the settlement agreements. Rather, he argues that his claims are based on "harms inflicted *after* [the Shree Jalaram defendants] violated the terms of the" settlement agreements, specifically by "doing construction work without proper containment, not replacing toilets in a timely manner, continued violations of Plaintiff's right to quiet enjoyment of the premises, and continued violations of the implied Warranty of Habitability."[67] As the defendants persuasively argue, this argument fails because the release in the November 2017 Settlement Agreement was broad and included "any and all claims, demands, causes of action, obligations, damages and liabilities . . . relating to Defendant's occupancy of the Premises."[68] That release thus expressly released (for new consideration) any claims that Mr. Thomas had in late 2017 related to alleged breaches of the 2016 settlement agreement and precludes his claims.

---

[66] October 2016 Settlement Agreement, Ex. B to Thakor Decl. – ECF No. 62-1 at 10–11 (¶ 8(a)); November 2017 Settlement Agreement, Ex. C to Thakor Decl. – ECF No. 62-1 at 38–39 (¶¶ 6–8).

[67] Opp. – ECF No. 64 at 3.

[68] Reply – ECF No. 77 at 4; November 2017 Settlement Agreement, Ex. C to Thakor Decl. – ECF No. 62-1 at 39 (¶ 7).

## 2. The Plaintiff's Claims Are Barred by Res Judicata

Res judicata bars all of the plaintiff's claims against the Shree Jalaram defendants.

A defendant may raise the affirmative defense of res judicata by way of a motion to dismiss under Rule 12(b)(6). *See Scott v. Kuhlmann,* 746 F.2d 1377, 1378 (9th Cir. 1984). Under 28 U.S.C. § 1738, federal courts are required to give full faith and credit to state court judgments. *San Remo Hotel, L.P. v. Cty. & Cnty. of San Francisco,* 545 U.S. 323, 336 (2005); *Brodheim v. Cty,* 584 F.3d 1262, 1268 (9th Cir. 2009).

"Res judicata, or claim preclusion, prohibits lawsuits on 'any claims that were raised *or could have been raised*' in a prior action." *Stewart v. U.S. Bancorp.*, 297 F.3d 953, 956 (9th Cir. 2002) (emphasis in original) (quoting *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001)). "To determine the preclusive effect of a state court judgment[,] federal courts look to state law." *Manufactured Home Cmtys. Inc. v. Cty, of San Jose*, 420 F.3d 1022, 1031 (9th Cir. 2005) (citing *Palomar Mobilehome Park Ass'n v. Cty. of San Marcos*, 989 F.2d 362, 364 (9th Cir. 1993)). "In California, res judicata precludes a plaintiff from litigating a claim if: [(1)] the claim relates to the same 'primary right' as a claim in a prior action, [(2)] the prior judgment was final and on the merits, and [(3)] the plaintiff was a party or in privity with a party in the prior action." *Trujillo v. County of Santa Clara*, 775 F.2d 1359, 1366 (9th Cir. 1985) (citations omitted).

### 2.1 Same Primary Right

"California's res judicata doctrine is based on a primary rights theory." *Manufactured Home*, 420 F.3d at 1031. The primary-rights theory

> [p]rovides that a "cause of action" is comprised of a "primary right" of the plaintiff, a corresponding "primary duty" of the defendant, and a wrongful act by the defendant constituting a breach of that duty. The most salient characteristic of a primary right is that it is indivisible: the violation of a single primary right gives rise to but a single cause of action.

*Id.* (quoting *Mycogen Corp. v. Monsanto Co.*, 28 Cal. 4th 888, 904 (2002)). "Thus, in California, 'if two actions involve the same injury to the plaintiff and the same wrong by the defendant then the same primary right is at stake even if in the second suit the plaintiff pleads different theories of recovery, seeks different forms of relief and/or adds new facts supporting recovery.'" *Furnace v. Giurbino*, 838 F.3d 1019, 1024 (9th Cir. 2016) (quoting *San Diego Police Officers' Ass'n v. San*

*Diego City Emps. Ret. Sys.*, 568 F.3d 725, 734 (9th Cir. 2009)). "The critical focus of primary rights analysis is the harm suffered." *Id.* (quoting *Brodheim v. Cry*, 584 F.3d 1262, 1268 (9th Cir. 2009)).

"A party may bring only one cause of action to vindicate a primary right." *Manufactured Home*, 420 F.3d at 1031 (citing *Mycogen*, 28 Cal. 4th at 904). "Claims not raised in this single cause of action may not be raised at a later date." *Id.* (citing *Mycogen*, 28 Cal. 4th at 904).

The primary right that Mr. Thomas asserts in this litigation is the same as the right he asserted in his prior litigation: his right to possession of his unit in the Hotel and to safe and sanitary conditions there.

In *Needelman v. DeWolf Realty Co., Inc.*, the plaintiff was served with a three-day notice to quit his rental apartment. 239 Cal. App. 4th 750, 753 (2015). He did not leave, and the lessors filed an unlawful-detainer action against him. *Id.* The parties reached a settlement that allowed the plaintiff to remain in the apartment so long as he abided by the conditions of his lease. *Id.* If he violated the lease, the lessors would be entitled to submit an *ex parte* application for a judgment for possession of the premises and for money damages for any rent due, plus attorney's fees and other damages. *Id.* at 753–54. The agreement also provided that the plaintiff "waive[d] any claims he may have . . . to bring an attempted wrongful eviction against [the lessors] or any action in any way arising out of or concerned with his tenancy . . . ." *Id.* at 754. The plaintiff allegedly violated the lease and the lessors secured a judgment giving them possession of the apartment. *Id.*

The plaintiff moved to set aside the judgment, and the trial court denied his motion. *Id.* at 755. The plaintiff then filed a complaint against the lessors for, among other things, breach of contract, wrongful eviction, and conversion. *Id.* The trial court granted the defendants' demurrer based on res judicata. *Id.*

On appeal, the plaintiff argued that five of his 10 causes of action were based on conduct occurring after the entry of judgment and that they were therefore unrelated to the unlawful detainer action. *Id.* at 758. The court upheld the trial court's ruling, finding that the plaintiff "had the opportunity to litigate the unlawful-detainer action and all of his claims were based on

defenses that could have been raised in this action or were specifically addressed and settled in the stipulated judgment." *Id.* at 761.

Here, the plaintiff's claims are similarly barred because they all were actually litigated or could have been litigated in his first lawsuit against the Shree Jalaram defendants and THC about the habitability issues at the Hotel or are defenses that could have been raised in the unlawful-detainer action. Thus, the doctrine of res judicata applies.

### 2.2 Prior Judgment on the Merits

"It is well established that court-approved settlement agreements . . . have res judicata effect." *Grimes v. Barber,* No. C 12–3111 CW, 2014 WL 793575, at *2 (N.D. Cal. Feb. 26, 2014) (citing *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746–47 (9th Cir. 2006)). The November 2017 Settlement Agreement was reviewed and approved by Judge Pro Tem Diana Kruze in San Francisco Superior Court.[69]

Additionally, in the unlawful-detainer action that the Shree Jalaram defendants brought against Mr. Thomas, Superior Court Judge Ronald E. Quidachay ruled against Mr. Thomas on the merits and entered a final judgment of eviction against him.[70]

The court-approved settlement agreement and the final judgment in the second lawsuit are prior judgments on the merits for the purposes of res judicata here.

### 2.3 Same Parties or Parties in Privity

The October 2016 Settlement Agreement lists Joseph Thomas as a claimant and lists Balwantsinh Thakor, Kirasinh Thakor, and Shree Jalaram Lodging, LP (among others) as released parties.[71] The November 2017 Settlement Agreement includes Shree Jalaram Lodging LP and Joseph Thomas as the parties entering into the agreement.[72] The plaintiff named Balwantsinh Thakor, Kirasinh Thakor, and Shree Jalaram Lodging LP (erroneously sued as Shree Jalaram

---

[69] November 2017 Settlement Agreement, Ex. C to Thakor Decl. – ECF No. 32.

[70] Judgment, Ex. F to Thakor Decl. – ECF No. 62-1 at 83.

[71] October 2014 Settlement Agreement, Ex. B to Thakor Decl. – ECF No. 62-1 at 7.

[72] November 2017 Settlement Agreement, Ex. C to Thakor Decl. – ECF No. 32.

1 LLP). Thus, the current suit involves the same parties as the previous state-court suits and
2 settlement agreements.

### 3. Defendants' Request for an Injunction

In their motion, the Shree Jalaram defendants moved the court to issue an injunction enforcing the covenant not to sue in the October 2016 Settlement Agreement.[73] The court denies the motion because it lacks jurisdiction to enforce the settlement agreement.

Courts have "the inherent power summarily to enforce a settlement agreement involving an action pending before it." *Brionez v. U.S. Dep't of Agric.*, No. C 01-3969 CW, 2007 WL 217680, at *2 (N.D. Cal. Jan. 26, 2007) (citing *In re Suchy*, 786 F.2d 900, 902–903 (9th Cir. 1985)). But courts have no inherent power to enforce settlement agreements after a case has been dismissed: "Enforcement of the settlement agreement . . . is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 378 (1994); *see Hagestad v. Tragesser*, 49 F.3d 1430, 1433 (9th Cir. 1994). Thus, if the original action has been dismissed, and the court has not retained jurisdiction to enforce the settlement agreement, a party seeking to enforce the terms of the settlement agreement must file a new action in a court that has subject-matter jurisdiction. Schwarzer, Tashima & Wagstaffe, *Cal. Prac. Guide: Fed. Civ. Pro. before Trial* ¶ 15:141 (The Rutter Group 2015). For a case to be in federal court, this means that there must be diversity jurisdiction because enforcing a settlement does not involve a federal question. *Id.* (citing *Limbright v Hofmeister,* 566 F.3d 672, 676 (6th Cir. 2009)); *see O'Connor v. Colvin*, 70 F.3d 530, 532 (9th Cir. 1995) (*per curiam*).

To invoke diversity jurisdiction in an action involving United States Citizens, the complaint must allege that "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States . . . ." 28 U.S.C. § 1332(a)(1). Here, the plaintiff and the Shree Jalaram defendants are all citizens of the State of California. The

---

[73] Mot. – ECF No. 62 at 6.

October 2016 Settlement Agreement was the result of a suit in California state court. Thus, the court lacks subject-matter jurisdiction to enforce the October 2016 Settlement Agreement. Any motion to enforce the agreement must be filed in state court.

## CONCLUSION

The court grants the motion to dismiss and dismisses the claims against Balwantsinh Thakor, Kirasinh Thakor, and Shree Jalaram Lodging LP. Because res judicata applies to any amendment of these claims, amendment would be futile, so the dismissal is with prejudice. *Cf, e.g., Ratliff v. Mortg. Store Fin. Inc.*, No. 17-cv-02155-EMC, 2017 WL 5890090, at *11 (N.D. Cal. Nov. 29, 2017) (dismissing complaint that was barred by res judicata with prejudice because amendment would be futile).

The court denies the motion for an injunction to enforce the covenant not to sue for lack of jurisdiction.

**IT IS SO ORDERED.**

Dated: August 1, 2019

LAUREL BEELER
United States Magistrate Judge